405 So.2d 501 (1981)
Torin D. THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 81-464.
District Court of Appeal of Florida, Second District.
November 6, 1981.
Jerry Hill, Public Defender, and Kathe Kates Davis, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
Appellant was convicted of possession of cocaine following a plea of nolo contendere in which he reserved his right to appeal the denial of a motion to suppress.
The evidence presented at the hearing on the motion to suppress was in conflict. However, because the court denied the motion, we shall present the facts in the light most favorable to the state. Officer Robert Bacon of the Fort Myers Police Department testified that on the evening of September 13, 1980, he was called to the Crown Lounge by its bouncer, Robert Coghill. Coghill told *502 Bacon that two nights before, appellant had been involved in an altercation at the lounge and that a customer had reported to him that appellant was carrying a gun in a small shaving case. Coghill was concerned because appellant had returned to the bar and again had a small shaving case with him. While Coghill and Bacon were talking, appellant left the bar, and the officer followed him outside.
Officer Bacon approached appellant in the parking lot and asked him for identification. Appellant replied that it was in his case which he had placed on the hood of an automobile. The officer felt the outside of the case, and when he did not detect the presence of a weapon allowed appellant to put his hand inside to produce the identification. As appellant pulled his billfold from the case, a small brown manila envelope fell onto the hood, and appellant brushed it onto the ground. Officer Bacon picked it up, opened it, and found marijuana inside. He then arrested appellant and searched the shaving case in which he found cocaine.
There are two questions to be decided in this case, and both of them are close. The first is whether the officer had a well founded suspicion sufficient to permit him to detain appellant for inquiry. The second is whether, in any event, he had a right to look into the manila envelope which fell out of the shaving case.
The detention issue is complicated by the fact that the bouncer testified that the customer who had complained to him about appellant two nights before only said that she feared that appellant had a gun in his shaving case rather than that she had actually seen one. Moreover, the altercation was not a fight but was only a loud argument between appellant and the customer's boyfriend. Had the officer testified that he had received this report from the bouncer, it would be hard for us to sustain appellant's detention in the parking lot. However, we must base our decision upon what was reasonably known to the officer at the time he made his stop. Particularly where the person imparting the information to him is not anonymous, an officer is entitled to accept what he is told unless there is reason to doubt its veracity. If, as here, the facts may have been embellished in the retelling, there was no reason for Officer Bacon to have known it.
Under the circumstances recounted by Officer Bacon, we believe that he had a well founded suspicion of criminal activity which was sufficient to justify temporarily detaining appellant for an interrogation pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and section 901.151(1), Florida Statutes (1979). See State v. Payton, 344 So.2d 648 (Fla. 2d DCA 1977). The officer understood that appellant had recently been in an altercation at the lounge and was reported as carrying a gun in his shaving case at that time. Appellant was again at the lounge, and he again had his shaving case with him. While it is not illegal for a person to carry a shaving case around with him, Officer Bacon had a right to conclude that it was out of the ordinary for appellant to continue to bring it to the lounge. To have ignored the report that appellant carried a gun in it would have been naive in today's violent society. See State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), approved, 387 So.2d 963 (Fla. 1980).
There are different legal principles involved in the search of the envelope. When Officer Bacon stopped appellant in the parking lot, he had no grounds upon which to arrest him. Moreover, there was no suggestion that the envelope contained a weapon. Therefore, Bacon could not legally look into the envelope unless he had probable cause to believe that it contained contraband. Two recent decisions of this court bear on this question. In Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978), we held that a policeman did not have the right to seize a hand rolled cigarette without a warrant merely because he suspected that it contained marijuana. On the other hand, we sustained the warrantless seizure of small tinfoil packets subsequently found to contain a controlled substance in State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978). *503 We reasoned that the defendant's bizarre conduct prior to the seizure coupled with the officer's knowledge that cocaine and heroin are usually carried in such packets provided probable cause for the seizure.
The facts of the instant case fall somewhere in between. The only testimony concerning Officer Bacon's experience with respect to brown manila envelopes was as follows:
Q After the envelope fell on the ground, what did you do?
A I asked Mr. Thompson to step back a couple of feet while I reached up and picked up the envelope. I then asked him to pick up his change and keys which were there.
Q What did you then do?
A I then just closed the side of the envelope and opened it, and inside I observed a green vegetable substance which I believe was marijuana.
Q Based on your experience as a law enforcement officer, is that how you came to that conclusion that it's marijuana?
A It is normally carried in that envelope when sold or used, and the substance inside appeared to be from my recognition. (Emphasis added.)
Even though Bacon made the foregoing comment in the course of explaining why he recognized the leafy substance to be marijuana, we shall assume that it could also be used as a reason why he opened the envelope. We shall also assume that he meant that brown manila envelopes are used to carry small quantities of marijuana, thereby distinguishing them from the customary baggie used to carry larger amounts. The problem, however, is that, unlike the small tinfoil packets in Redding, it cannot be said that most brown manila envelopes contain marijuana. There could have been any number of items in the envelope other than marijuana which appellant would wish to keep private. Legally, the conduct of appellant in trying to hide the envelope was no different that if he had simply told the officer that he did not want him to look into it without a search warrant. The issue is still probable cause. Officer Bacon did not say that before he opened the envelope he believed that it contained marijuana, nor did he articulate any facts upon which he could have predicated such a belief. He may have had the best of intentions, but he did not have probable cause. The court should have granted the motion to suppress.
We reverse the judgment of guilt and remand the case for further proceedings.
HOBSON, A.C.J., and RYDER, J., concur.