435 So.2d 850 (1983)
In the Interest of P.L.R., a Child.
No. 82-1242.
District Court of Appeal of Florida, Fourth District.
June 1, 1983.
Rehearing Denied August 24, 1983.
*851 Richard L. Jorandby, Public Defender, Anthony Calvello, Asst. Public Defender, and William Millsap, Legal Intern, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, Robert L. Bogen and Stewart J. Bellus, Asst. Attys. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
P.L.R., a juvenile, appeals from his adjudication of delinquency and the sentence rendered after the trial judge found him guilty of possession of marijuana. The only issue raised on appeal is whether the trial court erred in denying P.L.R.'s motion to suppress which was predicated on his claim that he had been illegally arrested and searched.
On February 10, 1982, Officer Joseph Lotta arrested an individual in an area of Pompano Beach that is known to the police as a high narcotics trafficking area, and as the site for a great number of street transactions in small amounts of marijuana. A group of youths approached the patrol car to ask about the arrest. One of the group, P.L.R., rode up to Lotta on his bicycle. Lotta had seen P.L.R. in the area before. P.L.R. was wearing a sweatshirt with two pockets in front. The left pocket was bulging open revealing a small yellow or brownish manila envelope which, according to Lotta, was of the type commonly used in the area and known to police officers as a "nickel bag of marijuana." Lotta reached down and removed the manila envelope from P.L.R.'s pocket, smelled it and determined that it smelled like marijuana. Lotta then opened the envelope and found a green vegetable matter that appeared to be marijuana. He then placed P.L.R. under formal arrest. Lotta subsequently testified that he had seen such envelopes used to package marijuana in "excess of a hundred times" and, in fact, that was "the only use I've ever seen these envelopes put to."
Officer Gordon Shoppe was also present at the scene. Shoppe corroborated Lotta's testimony regarding the extensive use of the type of envelope seized as a container for marijuana. He recognized P.L.R. as a "regular on the corner," one of a group of juveniles who don't go to school but are usually on the street and are frequently used by adult drug dealers to sell marijuana to passersby. Lotta and Shoppe transported P.L.R. to the police department. In the process of booking P.L.R., Officer Shoppe conducted a further search and found a clear plastic baggie in P.L.R.'s sock. Tests were performed on the contents of the envelope and the baggie and both showed a positive reaction for marijuana. A forensic chemist later analyzed both specimens and determined that the plastic bag contained marijuana but that the plant matter in the manila envelope was not marijuana.
The trial court took judicial notice of the fact that there was no search warrant in the file and that the seizure of evidence from the appellant could be sustained only if such seizure was proper under one of the exceptions to the warrant requirement. See Dixon v. State, 343 So.2d 1345 (Fla. 2d DCA 1977). One such exception exists where the search is incident to a valid arrest. The arrest must be justified by facts constituting probable cause. Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978). The test to determine whether probable cause exists is whether:
the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed.
*852 Dixon v. State, 343 So.2d at 1348, quoting Benefield v. State, 160 So.2d 706, 708 (Fla. 1964).
Since the possession of marijuana is a criminal offense in Florida, the observation of a person in possession of marijuana would ordinarily constitute probable cause to arrest the person and seize the marijuana. The question here is whether the observance of a container known to police officers to frequently contain marijuana, when considered together with certain other circumstances, is sufficient to constitute probable cause to conclude that the envelope does contain marijuana. In Albo v. State, 379 So.2d 648, 650 (Fla. 1980), the supreme court approved a police officer's seizure of bales wrapped in black plastic and burlap:
In the instant case, Detective Mastaler observed that thirty-five to forty bales in the motor home were square and wrapped in black plastic and burlap. In his two and one-half years of previous experience in undercover purchases and narcotics investigations, every bale he had ever purchased or seized had been packaged in an identical manner. Given his experience plus the defendant's failure to produce the vehicle's registration and the fact that the rear end of the motor home looked weighted down, the circumstances support Mastaler's determination that the bales were marijuana. We find that the record established sufficient probable cause for a reasonable man to conclude that an offense was being committed.
In contrast with the holding in Albo, P.L.R. cites Thompson v. State, 405 So.2d 501 (Fla. 2d DCA 1981), for the proposition that the police lacked probable cause to arrest him and to search the brown manila envelope in his pocket. The officer in Thompson had information that appellant was carrying a gun in a small shaving case. During a valid investigatory stop, a brown manila envelope fell to the ground; the officer opened the envelope, observed what he believed to be marijuana and placed Thompson under arrest. The Second District observed, "[I]t cannot be said that most brown envelopes contain marijuana." The Second District also found a search and seizure of two hand-rolled cigarettes invalid in Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978). The court explained that there was insufficient evidence to support the officer's testimony that he "knew" the cigarettes contained marijuana. A similar result was reached in Harris v. State, 352 So.2d 1269 (Fla. 2d DCA 1977), where a police officer seized a plastic bag.
On the other hand, an order of suppression was reversed in State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978), involving the seizure of several small, flat tinfoil packets found in defendant's shoes. Based on the arresting officer's experience with drug arrests involving such packets and the defendant's bizarre conduct, the court found that the officer had probable cause to believe the packets contained either heroin or cocaine.
The United States Supreme Court has also had difficulty with this problem. In Texas v. Brown, ___ U.S. ___, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the court, in a plurality opinion,[1] approved the seizure *853 of a balloon believed by a police officer to contain narcotics:
With these considerations in mind it is plain that Officer Maples possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance. Maples testified that he was aware, both from his participation in previous narcotics arrests and from discussions with other officers, that balloons tied in the manner of the one possessed by Brown were frequently used to carry narcotics. This testimony was corroborated by that of a police department chemist who noted that it was "common" for balloons to be used in packaging narcotics. In addition, Maples was able to observe the contents of the glove compartment of Brown's car, which revealed further suggestions that Brown was engaged in activities that might involve possession of illicit substances. The fact that Maples could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents  particularly to the trained eye of the officer.
Id. at ___, 103 S.Ct. at 1543. In addition to his experience with balloons, the officer in Brown observed "several small plastic vials, quantities of loose white powder, and an open bag of party balloons" before making the seizure. Hence, as is true in virtually all of the cases that have approved seizures, the supporting circumstances beyond the officer's experience with the container in question appeared to play an important role in the appellate court's decision.
In this case Officers Lotta and Shoppe both testified that they were patrolling in "a high narcotics trafficking area" where many street sales of small amounts of marijuana took place. Both had made numerous drug arrests and were familiar with the frequent use of small manila envelopes as marijuana containers. Both had seen P.L.R. in the area before. They also explained that juveniles, like P.L.R., were often used by adult dealers in the area to make drug sales. Lotta was actually arresting someone for a narcotics violation when P.L.R. and his companions gathered around the patrol car asking about the arrest. In other words, Lotta and his fellow officer were able to articulate several reasonable grounds to justify Lotta's belief that the envelope contained marijuana, even before he smelled the envelope or opened it. P.L.R. offered no evidence to contradict the officers' testimony. Under these circumstances, as in Albo, we believe the evidence is sufficient to support the trial court's conclusion that the officer had probable cause to arrest P.L.R. for possession of marijuana. And, since the initial search was incident to a valid arrest, the subsequent seizure of the marijuana found in appellant's sock during booking was also valid.
We concede that we are troubled, as the Second District obviously has been, by the extent to which police officers may rely upon their experience to identify articles of an apparent innocent nature as containers of contraband to a sufficient certainty to establish probable cause for the arrest of the possessor of the container. In actuality we are unable to reconcile our decision today with the holdings in Carr and Thompson and we acknowledge that the proof here may not have been as extensive as it was in Redding, Albo or Brown. Nonetheless, we approve the decision of the trial court on the basis that the trial judge is in the best position to judge the credibility and efficacy of the police officer's testimony. Accepting that testimony and the inferences to be drawn therefrom as true, we believe the evidence is sufficient to sustain the trial court's findings. Judges must evaluate the police officers' actions based *854 not upon the judges' own experience with the potential contents of brown manila envelopes but rather upon the experience of the officers considered in the context of the situation existing at the time of seizure or arrest. Dixon at 1348. The trial court's authority and duty to carefully evaluate the credibility and weight of such testimony as part of its overall responsibility to determine the existence of probable cause should constitute a sufficient check on the authority of the police to go "too far" in identifying otherwise harmless containers as contraband.
Accordingly, we approve the decision of the trial court and affirm the conviction and sentence of the appellant.
BERANEK and HERSEY, JJ., concur.

OPINION ON REHEARING
ANSTEAD, Chief Judge.
Although we deny appellant's petition for rehearing we grant his request to acknowledge that our decision is in conflict with other Florida decisions on the same issue. Accordingly, we hereby certify that our decision is in conflict with Thompson v. State, 405 So.2d 501 (Fla. 2d DCA 1981); Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978); and Harris v. State, 352 So.2d 1269 (Fla. 2d DCA 1977).
HERSEY, J., concurs.
BERANEK, J., dissents without opinion.
NOTES
[1] In a separate concurrence, three justices noted:

Alternatively, the balloon could be one of those rare single-purpose containers which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." [Arkansas v.] Sanders, supra, [442 U.S. 753] at 764-765, n. 13 [, 99 S.Ct. 2586, at 2593-2594, n. 13, 61 L.Ed.2d 235]. Whereas a suitcase or a paper bag may contain an almost infinite variety of items, a balloon of this kind might be used only to transport drugs. Viewing it where he did could have given the officer a degree of certainty that is equivalent to the plain view of the heroin itself. If that be true, I would conclude that the plain view doctrine supports the search as well as the seizure even though the contents of the balloon were not actually visible to the officer.
This reasoning leads me to the conclusion that the Fourth Amendment would not require exclusion of the balloon's contents in this case if, but only if, there was probable cause to search the entire vehicle or there was virtual certainty that the balloon contained a controlled substance. Neither of these fact-bound inquiries was made by the Texas courts, and neither should be made by this Court in the first instance. Moreover, it may be that on remand the Texas Court of Criminal Appeals will find those inquiries unnecessary because the respondent may have waived his right to demand them.
(Footnotes omitted.) ___ U.S. ___, 103 S.Ct. 1547.