BLACK, Judge.
Melva Gay challenges her judgment and sentence for possession of five methylphe-nidate pills (brand name Ritalin), a con *1108 trolled substance; possession of drug paraphernalia (the aftermarket pill box in which she had the Ritalin); and possession of a prescription drug without a prescription (tramadol). She was sentenced to twelve months’ probation on the methyl-phenidate charge (a third-degree felony) and six months’ probation on the remaining charges (both misdemeanors), all to run concurrently. Gay pleaded no contest but expressly reserved the right to appeal the denial of her dispositive motion to suppress. We reverse her conviction and sentence.

Facts

Gay’s motion to suppress was based, in pertinent part, on the grounds that the pills and pill box were illegally seized without a warrant and were obtained as the result of an illegal investigatory detention. At the hearings on the motion,[1] the arresting officer testified that he stopped the vehicle driven by Mr. Gay (the driver), in which Melva Gay was a passenger, for the traffic infraction of failing to come to a complete stop at a stop sign. After determining not to issue a citation, the officer asked the driver to step out of the vehicle and inquired whether he could search the vehicle for illegal narcotics. The driver consented to the search. The officer then asked Gay to step out of the vehicle. Gay did not take her purse with her when she exited the vehicle.
The officer testified that he immediately noticed a “faint odor” of cannabis upon beginning his search of the passenger compartment of the vehicle. He continued his search of the passenger compartment, including searching Gay’s purse.[2] During his search of Gay’s purse, the officer found “a small, metal pill container — an aftermarket pill container” available for purchase in many drugstores. He removed the pills and box from the vehicle and returned to his patrol car where he learned, via the website Drugs.com, that some of the pills were Ritalin and trama-dol. He then returned to the vehicle, read Gay her Miranda[3] rights, and began to question her about the pills. The officer testified that at the time he found the pills he did not know what they were; he identified them only through the Drugs.com website. The officer testified that although he knew the purse belonged to Gay and not the driver, he did not seek consent from Gay to search the purse. He confirmed that he did not ask Gay for permission to search the pill box or permission to take the pills or pill box from the vehicle back to his patrol car. The officer also confirmed that he would not have allowed Gay to leave the scene at that point and that no marijuana was found in the vehicle.
Analysis
Review of the denial of a motion to suppress presents a mixed question of law and fact. Crawford v. State, 980 So.2d *1109 521, 523 (Fla. 2d DCA 2007). We defer to the trial court’s factual findings provided they are supported by competent, substantial evidence. Id. However, we review de novo the questions of reasonable suspicion and probable cause as both are legal conclusions. See id.
Although initially a stop due to the traffic violation, once the officer determined not to cite the driver and asked the driver for consent to search the vehicle, the encounter became consensual. See Smith v. State, 95 So.3d 966, 969 (Fla. 1st DCA 2012). At this juncture, the encounter was consensual as to Gay as well.
However, once the officer searched Gay’s purse and pill box, removed the pill box from the vehicle, and took the box to his patrol car, the encounter again became an investigatory detention. An investigatory detention requires reasonable suspicion that an individual has committed or is about to commit a crime; the officer must have “ ‘a well-founded, articulable suspicion of criminal activity.’ ” Smith, 95 So.3d at 968 (quoting § 901.151(2), Fla. Stat. (2010)). “An officer’s mere suspicion or hunch is not enough to permit this type of detention.” Id. (citing Popple v. State, 626 So.2d 185, 185 (Fla.1993)). Here, like in Smith, “[t]he deputy’s actions constituted a show of authority that would lead a reasonable person to conclude he or she was not free to end the encounter and leave.” See id. at 969. It was only upon his return to Gay with the knowledge that at least some of the pills in the box were controlled substances that the officer inquired of Gay as to whether she knew what the pills were and whether she had a prescription for them. Cf. Keller v. State, 946 So.2d 1233, 1234 (Fla. 4th DCA 2007) (affirming a trafficking conviction and concluding that the officer had probable cause to believe, at the time the pills were seized, that the pills were hydrocodone and that they did not belong to the defendant based upon the facts that the prescription pill bottle was visible from the officer’s position outside of the vehicle, that the label on the bottle provided a name different than the name on the defendant’s driver’s license, and the officer asked the defendant what was in the bottle before removing the bottle from the vehicle).
“ ‘Probable cause must exist before an object can be seized; after-the-fact discovery of contraband does not render the seizure legal ....’” Crawford, 980 So.2d at 525 (quoting E.B. v. State, 866 So.2d 200, 204 (Fla. 2d DCA 2004)). And, under the “plain view” doctrine — argued by the State at both the suppression hearing and on appeal — it must be “immediately apparent to the officer that the [seized] object constitutes evidence of a crime.” M.L. v. State, 47 So.3d 911, 912 (Fla. 3d DCA 2010). “ ‘[I]mmediately apparent’ means that ‘at the time police view the object to be seized, they must have probable cause to believe that the object is contraband or evidence of a crime.’ ” Id. at 913 (alteration in original) (quoting Jones v. State, 648 So.2d 669, 678 (Fla.1994)). “‘Probable cause does not exist when the circumstances are equally consistent with noncriminal activity as with criminal activity.’ ” Crawford, 980 So.2d at 525 (quoting E.B., 866 So.2d at 204).
Here, neither the illegal nature of the possession of the pills nor the type of pills was known to the officer at the time he removed them from the vehicle. Nothing about the pills or pill box gave him a reasonable suspicion that Gay had committed, was committing, or was about to commit a crime. Nor did he know that any of the pills were controlled substances at the time he seized them. Pursuant to his own testimony at the suppression hearing, the *1110 officer did not know what the pills were when he opened the container so he took them back to his car. As in Smith, the officer did not testify that in his experience people carry illegally possessed prescription drugs in aftermarket pill boxes. See 95 So.3d at 969. Nor did he state that he believed they were pills of an illicit nature or that Gay was in “unlawful possession of a controlled substance.” See Smith, 95 So.3d at 969; see also Oliveira v. State, 527 So.2d 959, 959 (Fla. 4th DCA 1988) (concluding “the [S]tate failed to present evidence that the officer had probable cause to believe the ‘prescription medicine’ he seized was an illegal substance”). “[T]he incriminating nature of the pills was not immediately apparent to the deputy” such that he could have immediately asked Gay for a prescription. See Smith, 95 So.3d at 969; see also M.L., 47 So.3d at 913. “The deputy did not testify as to any markings on the pills, or lack thereof, which helped him identify what they were .... ” Smith, 95 So.3d at 970. Moreover, the circumstances surrounding the officer’s search of the purse and the box do not justify such a suspicion.
The facts of our case are even less concerning than those found inadequate in Smith. See id. at 969 (“Appellant appeared passed out on the ground; when aroused he appeared intoxicated with slurred speech; and he tried to obscure the bag of pills.... The circumstances may have justified a reasonable belief that Appellant was under the influence of whatever was in the pills, which in and of itself [given the facts presented] is not criminal activity.”). The officer testified to a “faint odor” of marijuana but found no marijuana in either the purse or pill box. And the mere observation of pills in an aftermarket container is equally consistent with noncriminal activity as with criminal activity. See Crawford, 980 So.2d at 525. Thus, “ ‘[tjhere must be at least an additional objective and reasonably specific element justifying the state agent’s inference of wrongdoing.’ ” M.L., 47 So.3d at 913 (quoting Caplan v. State, 531 So.2d 88, 92 (Fla.1988)). “‘Under a probable cause standard ... the officer at the scene must be able to explain to an objective magistrate or judge just how it is possible to distinguish’ ” the unlawfully possessed prescription pills from lawfully possessed prescription pills or from nonprescription pills. See id. (quoting Caplan, 531 So.2d at 92).
The investigatory detention and seizure of the pills and pill box was unauthorized; the officer lacked reasonable suspicion of criminal activity and probable cause to seize the evidence. Gay’s motion to suppress should have been granted. We reverse Gay’s conviction and sentence and remand to the trial court to grant the motion and discharge Gay.
Reversed and remanded.
CASANUEVA and MORRIS, JJ., Concur.

. Two hearings were held on the motion for reasons not relevant to the resolution of this appeal.

. In its order denying the motion to suppress, the trial court determined that the "faint odor” of marijuana provided the officer with probable cause to search Gay's purse, citing Wyoming v. Houghton, 526 U.S. 295, 301-02, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), for its holding that where probable cause to search the passenger compartment of a car exists, the ambit of the search includes a passenger's personal belongings remaining in the vehicle. Gay raised the issue on appeal, and under the facts of this case and a review of the totality of the circumstances, we question whether the officer did indeed have probable cause to search Gay’s purse. However, we make no determination on that issue and our holding is based solely on the invalid detention of Gay and illegal seizure of evidence.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).